JAMES LAKE, ESQ.
James Lake, Bar No. 298060
9314 Forest Hill Blvd, Suite 644
Wellington, Florida 33411
(949) 307-3665
jim@spartan-eagle.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPARTAN EAGLE LEASING CAPITAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRYCE EGBERT, TAISIIA POPOVA, EGBERT ENTERPRISES, LLC, DEEPER DIVE LA MANAGEMENT, LLC; DEEPER DIVE LA, LLC, ALI GARAWI, GREEN ACRE MANAGEMENT, INC., THOMAS FORINELLI, FINAL BELL CORP., GARRY RIVERA, ALAN MAO, JAMES ESPOSITO, HERITAGE MISSOURI, LLC, and DOES 1-100, Inclusive, <br><br> Defendants. | CASE NO.  24-8896-cv <br><br> **VERIFIED COMPLAINT FOR:** <br> 1) **BREACH OF CONTRACT;** <br> 2) **CONVERSION;** <br> 3) **CLAIM AND DELIVERY;** <br> 4) **DECLARATORY RELIEF.** <br><br> **DEMAND FOR JURY TRIAL** |

## VERIFIED COMPLAINT FOR DELARATORY AND INJUNCTIVE RELIEF AND JURY DEMAND

**COMES NOW**, Plaintiff Spartan Eagle Leasing Capital, LLC, alleges for its Verified Complaint for Declaratory and Injunctive Relief, as follows:

## THE PARTIES

1.      Plaintiff Spartan Leasing Capital, LLC ("Plaintiff") is a Florida limited liability company that resides in and is a citizen of Florida.  Plaintiff's sole owner, James Lake, is a citizen and resident of Florida.

2.      Defendant Deeper Dive LA Management, LLC ("DDM"), is a California limited liability company that resides in and conducts business in the City of Los

Angeles, County of Los Angeles, State of California.   DDM's members are citizens of Arizona, California and Michigan.

3.      Defendant Deeper Dive LA, LLC ("DDLA"), is a Delaware limited liability company that conducts business in the City of Los Angeles, County of Los Angeles, State of California.  DDLA's members are citizens of Arizona, California, Michigan and Texas.

4.      Defendant Bryce Egbert ("Egbert") is a citizen of, resides in, and conducts business in the City of Los Angeles, County of Los Angeles, State of California.

5.      Defendant Taisiia Popova is married to Egbert, is a citizen of, resides in, and conducts business in the City of Los Angles, County of Los Angeles, State of California.

6.      Defendant Egbert Enterprises, LLC, is an Arizona limited liability company, and does business under the name of "Egbert Enterprises II, LLC", as well as Egbert Enterprise, LLC, resides in, and does business in Los Angeles County, California.

7.      Defendant Ali Garawi is a citizen of, resides, in and conducts business in the city of Los Angeles, County of Los Angeles, State of California.

8.      Defendant Green Acre Management, Inc., is a California corporation conducting business in the city of Los Angeles, County of Los Angeles, State of California.

9.      Defendant Thomas Fortinelli is a citizen of, resides in, and conducts business in the city of Los Angeles, County of Los Angeles, State of California.

10.      Defendant Final Bell Corp., is a California corporation conducting business in the city of Los Angeles, County of Los Angeles, State of California.

11.      Upon information and belief, Defendant Garry Rivera is a citizen of, resides in, and conducts business in the city of Los Angeles, County of Los Angeles, California.

12. Upon information and belief, Defendant Alan Mao resides and conducts business in the city of Los Angeles, County of Los Angeles, California.

13. Upon information and belief, Defendant James Esposito resides in and conducts business in the city of Los Angeles, County of Los Angeles, California.

14. Defendant Heritage Missouri, LLC, is a Missouri limited liability company, with citizenship of Missouri and California, and conducts business in the city of Los Angeles, County of Los Angeles, State of California.

15. The true names and capacities of Does 1 through 100 are unknown to the Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege such names and capacities as soon as they are ascertained. Plaintiff is informed and believes, and upon that basis alleges, that each of the fictitiously named Defendants are in some manner responsible, liable, and/or obligated to Plaintiff in connection with the acts alleged herein.

16. The Plaintiff is informed and believe and upon that basis allege that the Defendants and Does 1 through 100 are co-conspirators and/or aiding and abetting the other Defendants in all wrongful action herein alleged. Each Defendant was aware of their co-conspirators' plan, agreed thereto, and intended said wrongful acts, and thereafter cooperated in performing said action to achieve the goal.

## JURISDICTION AND VENUE

17. The Court has jurisdiction over this action because the amount in controversy exceeds $75,000, exclusive of interest and costs, and also because Plaintiff seeks equitable and declaratory relief.

18. Jurisdiction is also proper in the Court due to complete diversity, and based upon 28 U.S.C. § 1332, which grants federal court jurisdiction in all civil actions between citizens of different states, as Defendants are resident of California, while Plaintiff is a resident of Florida.

19. Upon information and belief, no members of DDLA, DDM, nor Heritage

3

COMPLAINT

Missouri are citizens or residents of Florida, and thus, complete diversity jurisdiction remains.  DDLA and DDM have Egbert a citizen and resident of California, as well as the remaining non-party minority members are citizens of Michigan (Herbert Capital), Texas (1010 Eighty) and Arizona (Hudson East).  Upon information and belief, Heritage Missouri, LLC, is owned and managed by members and citizens of California, including Defendant Garry Rivera, as well Missouri, and availed itself to this Court's jurisdiction by conducting business in Los Angeles, California.

20.    Similarly, this court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

21.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events and omissions giving rise to this Complaint occurred within this judicial district.  All Defendants conducted business and purposefully availed themselves of jurisdiction in this venue and court by participating in various aspects of leasing, transferring, operating or obtaining possession/use of Plaintiff's equipment that also was leased, delivered and installed in a location in downtown Los Angeles, California.

## ALLEGATIONS COMMON TO ALL CLAIMS

22.    This is a case about a standard equipment lease in serious default that now, due to Defendants' collective theft, and conversion, have created a potential serious risk of harm for equipment owned by Plaintiff, and initially leased to Deeper Dive LA Management, LLC, and its related entities and owners, including Egbert Defendants, and additionally in the control and  possession of Garawi and his entity,  Green Acre Management, and Tom Fornitelli and his entity, Final Bell (Collectively "Garawi Defendants").  Upon information and belief, Garry Rivera, Alan Mao and James Esposito are owners and/or representatives of Heritage Missouri (Collectively, Heritage Missouri, LLC, Garry Rivera, Alan Mao and James Esposito are referred to as "Heritage Defendants") who wrongfully have converted and retain possession and control over

one of Plaintiff's machines, the RFD Machine, without Plaintiff's approval or consent, as outlined below.

23.    Plaintiff is an equipment leasing company that provides leasing options to manufacturing and industrial users across the country.

24.    In the spring of 2023, Defendant Egbert approached Plaintiff about leasing equipment for his licensed manufacturing cannabis business in the city of Los Angeles, California, for Deeper Dive LA Management ("DDM").

25.    Deeper Dive LA Management is the licensing arm of the parent entity, Deeper Dive LA ("DDLA").

26.    Egbert is the managing member of both Deeper Dive LA Management, and Deeper Dive LA, where his company Egbert Enterprises is the majority owner of both entities.

27.    As Egbert is married to Popova, and involved with Egbert in Egbert's business, and California is a community property state, she too is subject to liability for Egbert's business ventures.

28.    Initially, Egbert and Plaintiff negotiated a lease for a March falling film recovery machine valued at $250,000.00.  Plaintiff delivered and installed this March machine in May of 2023, and as outlined in the Interim Lease Agreement, dated March of 2023 at Defendants' manufacturing facility, located at 2936 E. 11th Street, Los Angeles, California 90023 ("DDLA Facility"). (**Exhibit A**, Interim Lease Agreement).

29.    Shortly thereafter, Egbert approached Plaintiff again and asked for additional leasing assistance as Egbert did not have the funds to purchase new equipment outright.  In May and June of 2023, Plaintiff did as requested, and provided leasing for Defendants to secure additional equipment of Plaintiff's choice, including the following:

(a) Two (2) Delta Separation Cup-30 Centrifuge Collection Extraction systems;

(b) Delta Separation Rolled Film Distillation ("RFD")

(c) Perma Cool System, and

(d) Two (2) Perma Cool Condensers

(**Exhibit B**, Master Lease Agreement).  (This equipment, together with the above referenced Marsh falling film machine, shall be collectively entitled "Equipment").  Plaintiff paid a total of Six Hundred Forty Eight Thousand Five Hundred Sixty Six Dollars ($648,566.00) for the Equipment for Defendants.  Plaintiff also paid approximately $50,000 for installation and various hoses and connections in addition to the Equipment price, all delivered and installed at the DDLA Facility.

30.    Ultimately, the parties completed an amended lease outlining these additional items, with the completed Master Lease Agreement.  (**Exhibit B**, Master Lease Agreement; **Ex. C**, Lake Decl.).

31.    Under the Lease Agreement, Defendant was required to provide monthly lease payments.  However, Defendants have not made a single payment despite repeated promises otherwise.  (**Ex. B**, Sect. 3, 4, 20(a); **Ex. C**, Lake Decl.).

32.    In addition to failing to pay the monthly lease obligation, Defendants have breached the lease by failing to maintain insurance over the equipment at issue, which was never provided.

33.    In addition to the breaches of nonpayment and other lease breaches outlined above, Plaintiff found out that Egbert wrongfully and inappropriately converted Plaintiff's RFD machine and transferred it across state lines to Heritage Defendants.  (**Exhibit D**, Chen Declaration; **Exhibit E**, Shipping Receipt of RFD).

34.    Upon information and belief, Defendants Gary Rivera, Alan Mao and James Esposito, on behalf of Heritage Defendants, negotiated the transfer of Plaintiff's RFD machine from the DDLA Facility to their Heritage Missouri business. (**Exhibit D**, Chen Decl.).  In fact, Defendant Rivera's name and phone number were listed as the recipient on the shipping receipt for this transfer of Plaintiff's RFD machine to Heritage Defendants.  (**Exhibit E**, Shipping Receipt of RFD).

6

35. Heritage Defendants conspired with Egbert Defendants concerning the wrongful removal and transfer of Plaintiff's RFD machine from the DDLA Facility without any payment, involvement or knowledge of this transfer from Plaintiff whatsoever.

36. Heritage Defendants purposefully availed themselves of the privilege of conducting activities within the forum by ongoing negotiations and ultimate transfer of the RFD machine to Heritage Defendants from the DDLA Facility, as well as having contacts within this judicial forum.

37. Plaintiff paid $75,000 for this RFD machine that has been wrongfully removed from the DDLA Facility without Plaintiff's knowledge, consent, approval or otherwise.

38. At Egbert's direction, in September of 2023, Defendants' staff loaded this Spartan Eagle owned RFD into a box truck and shipped it to a company in Missouri. (**Exhibit D**, Chen Declaration; **Exhibit E**, Shipping Receipt of RFD).

39. Egbert was paid $100,000 by Heritage Defendants for the RFD machine owned by Plaintiff. (**Ex. D**, Chen Decl.). Despite receiving these funds, neither Egbert Defendants, nor Heritage Defendants paid Plaintiff for this RFD equipment that was misappropriated, converted and transferred across state lines without Plaintiff's knowledge or consent. Nor did Egbert, nor Rivera, Mao or Esposito, inform Plaintiff that he was transferring, moving, or disposing of the RFD Machine. In fact, Plaintiff was wholly unaware that this transfer even occurred.

40. When Plaintiff learned of this months later, Plaintiff filed a police report because of this wrongful theft and conversion of Plaintiff's RFD Machine. (**Exhibit F**, Police Report).

41. Plaintiff attempted to contact Rivera and the other Heritage Defendants by leaving messages. The Heritage Defendants, despite being aware of Plaintiff's ownership rights in the RFD machine, by other members of DDLA as well as Plaintiff's

7

messages, have refused to cooperate and return or pay Plaintiff for this wrongful transfer, conversion and transfer Plaintiff's RFD across state lines, from California to Missouri.

42. Pursuant to the Lease Agreement, Defendants were precluded from selling or removing any of Plaintiff's equipment. Multiple provisions prevent removing or selling Plaintiff's equipment, including

(a) Section 5 - Defendants/Lessee not allowed to convey any unit subject to the lease without Plaintiff's knowledge and consent;

(b) Section 6 - "Lessee shall not change the location of any Unit from that specified in the Lease without obtaining Lessor's prior consent";

(c) Section 11 - Defendants shall not "relinquish possession or control of, or assign, pledge, hypothecate, or otherwise transfer, dispose of, or encumber, any Unit, this Agreement or any Lease or any part thereof or interest therein … without prior written consent from Lessor").

(**Ex. B**, Lease Agreement). Despite these clear conditions, Defendants did all of these.

43. Pursuant to Section 20, Egbert and DDLA/DDM created a serious default by not paying any payments whatsoever, but also for converting and selling Plaintiff's equipment without Plaintiff's knowledge, consent, or approval. Given this serious default, and as allowed by Section 21(b), Plaintiff issued a default notice terminating the Lease and demanded to take immediate possession of Plaintiff's equipment. (**Ex. G**, First Default Notice).

44. Per the Lease Agreement, Plaintiff informed Defendants it was demanding return of its equipment and was demanding the contractual right to "enter upon the premises of Lessee or any other premises where any of such Units maybe located and take possession of all or any of such Units and from that point hold, possess, operate, sell, lease, and enjoy such Units free from any right of Lessee, its successors and assigns". (**Ex. B**, Lease Agreement; **Ex. G**, Default Notice). Plaintiff demanded access

to both the DDLA Facility as well as to wherever the RFD machine was transferred.

45.    Despite this notice, Defendants refused to provide access to Plaintiff's Equipment as per the Lease Agreement nor did Defendants make any attempt at a single payment. (**Ex. C**, Lake Decl.).

46.    This initial default notice was ignored, forcing Plaintiff to again issue a subsequent default letter, again demanding immediate access to the Plaintiff's equipment. (**Ex. H**, Second Default Demand). Again, this demand was ignored.

47.    Plaintiff also sought to retrieve the RFD from Heritage Defendants, but these requests and inquiries were rebuked, and Plaintiff has never been paid for the loss and transfer of this RFD machine across state lines without Plaintiff's knowledge or consent.

48.    In July of 2024, Plaintiff was added to a text chain since additional owners were said to be involved in the operations of the DDLA/DDM at the DDLA Facility. (**Ex. I**, July Text Chain). These additional owners were Ali Garawi, and his company Green Acre Management, and Tom Fornitelli, through his company Final Bell. These additional owners asserted themselves into the operation of the DDLA facility where the Plaintiff's equipment is located.

49.    During this initial text chain, Plaintiff was shown videos and photos of equipment being boxed up in the Defendants' DDLA Facility, and then Plaintiff communicated with these additional owners and demanded the right to access and remove Plaintiff's equipment from these additional owners of the DDM/DDLA business, yet, despite promises otherwise, and clear ownership of equipment titled to Plaintiff, Defendants have refused to allow Plaintiff to retrieve the equipment. (**Ex. C**, Lake Decl.; **Ex. D**, Chen Declaration).

50.    In late July of 2024, this group text was created that included Garawi Defendants, Egbert, members of DDLA/DDM, Plaintiff and non-party Elan Chen who is the owner of a company, Hera Farms, that also owns equipment leased by

DDLA/DDM. (**Ex. I**, Text Chain). The purpose of the text message was to review the operations status of DDLA/DDM and Garawi Defendants, and Plaintiff and Chen were added because of the leased equipment they owned in the LA facility. (**Ex. C,** Lake Declaration; **Ex. D**, Chen Declaration; **Ex. I**, July Text Chain).

51. On this text chain, Defendant Fornitelli and Defendant Garawi made initial promises that third party equipment in this facility would be safe and securely kept for the proper ownership. Defendant Garawi said that the equipment is "100% safe and isn't going anywhere", and that "you can come see/check equipment anytime You'd like". (**Ex. I**, July Text Chain).

52. Defendant Fortinelli and Defendant Garawi created a framework where the various owners of equipment in the LA facility would work with Defendant Garawi with regard to the equipment, as they recognized that the bulk of these items were not owned by Egbert or DDLA/DDM, but were owned by third parties, including Plaintiff and Elan Chen/Hera Farms. (**Ex. I**, July Text Chain).

53. This was followed up with Plaintiff providing proof of ownership, which was then confirmed by a member of DDLA/DDM that the equipment listed was Plaintiff's property, not DDLA/DDM/Egbert, or Heritage Defendants. (**Ex. I**, July Text Chain; **Ex. C,** Lake Decl.; **Ex.D**. Chen Decl.). Plaintiff was left with the understanding that the verification was completed, and he could coordinate the pickup of its Equipment.

54. These additional owners, Garawi Defendants, have not paid off the Lease Agreement obligation. Yet, they continue to maintain full control of the DDLA Facility and are refusing to provide access to allow Plaintiff to retrieve its Equipment. (**Ex. C,** Lake Decl.).

55. These additional owners, Garawi Defendants, as well as all Defendants are exercising dominion and control over Plaintiff's Equipment wrongfully, given the outstanding default, and Lease Agreement requirements that provide rightful

repossession by Plaintiff.  (**Ex. C**, Lake Decl.; **Ex. B**, Lease).

56.    In late July into August, Plaintiff again began discussing retrieving his Equipment from Defendants LA Facility.   Plaintiff communicated with Garawi and Fortinelli on repeated occasion, where the same method of equipment removal was discussed and agreed upon.   Both Defendant Garawi and Defendant Fortintelli represented that Plaintiff would be allowed to retrieve its Equipment located in the DDLA Facility.   Chen had similar discussions for the return and retrieval of his equipment. (**Ex. C**,  Lake Decl.; **Ex.D**. Chen Decl.).

57.    In September, Plaintiff coordinated a crew, trucks/trailers, and a crane to remove the equipment, but when Plaintiff was scheduled to arrive, Garawi postponed the retrieval claiming he needed additional time.

58.    Since then, Plaintiff has repeatedly sought to have access to remove the Equipment from Garawi but has been denied its right to do so.

59.    Given this delay, on September 29, 2024, Plaintiff sent a formal demand to both Garawi and Fortinelli, for all Defendants, again reminding them that the Lease Agreement between Plaintiff and DDLA/DDM/Egbert Defendants was in default, had never issued a single payment, and Plaintiff simply sought to retrieve his equipment as allowed by the Lease Agreement.   (**Ex. K**, Sept. 29 Demand Letters).  Neither Garawi nor Fortinelli responded to these demands, nor answered communications and have not allowed Plaintiff the right to retrieve his equipment.

60.    On Thursday October 3, 2024, and as indicated in the prior correspondence, Plaintiff's hired crew went to the DDLA Facility to remove Plaintiff's equipment. (**Ex. L**, Decl. Caver).

61.    Upon arrival, this crew was told repeatedly that Garawi would not allow them to remove and retrieve the equipment.   This crew asked at least twice over the course of a 2-3 hour period.  (**Ex. L**, Decl. Caver).

62.    Despite telling Plaintiff that he needs to remove its Equipment from the

11
COMPLAINT

DDLA Facility, Defendants refuse to allow Plaintiff to even access the DDLA Facility, let alone remove or even see the Equipment.

63. There is immediate risk of irreparable harm if Defendants are allowed to continue to have access and control over the Equipment, given the prior history of nonpayment, ongoing breaches and defaults, and selling/transferring the RFD equipment that they do not even own. Plaintiff is concerned that if not stopped, Defendants will continue to liquidate Plaintiff's equipment and assets as they have done before.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT – BREACH OF LEASE AGREEMENT
(Against DEFENDANTS EGBERT, EGBERT ENTERPRISES, LLC, DEEPER DIVE LA MANAGEMENT, LLC, DEEPER DIVE LA, LLC, ALI GARAWI, GREEN ACRE MANAGEMENT, INC., THOMAS FORINELLI, FINAL BELL CORP, and DOES 1-100)

64. Plaintiff re-alleges and incorporates as though set forth fully herein by this reference each and every allegation contained in Paragraphs 1 through 63, inclusive of this Complaint.

65. Plaintiff has performed all actions required of it pursuant to the above Equipment Lease Agreement. Plaintiff delivered the requested financing and equipment to Defendants and expected payment. (**Ex. A; Ex. B**).

66. Defendants breached the Lease Agreement by failing to pay for the equipment and refusing to allow Plaintiff to retrieve and repossess its equipment as allowed by the Lease Agreement.

67. Defendants were served with multiple default letters, caused by nonpayment, and Defendants are in breach of the Lease Agreement for failing to return the equipment pursuant to the default demand.

68. Defendants also breached the Lease Agreement by wrongfully converting and removing the RFD machine without Plaintiff's approval or knowledge, an

egregious act.

69.    Defendants are also wrongfully and currently still using and holding the equipment hostage and has breached the Lease Agreement by not allowing Plaintiff the ability to return and obtain possession.

70.    Defendants committed the acts alleged herein willfully, maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff and from an improper and evil motive amounting to malice, and in conscious disregard of the Plaintiff's rights.

**SECOND CAUSE OF ACTION**
**CONVERSION (CC § 3379)**
(Against All Defendants)

71.    Plaintiff re-alleges and incorporates the allegations as though set forth fully herein by this reference each and every allegation contained in Paragraphs 1 through 70, inclusive of this Complaint.

72.    Plaintiff financed and delivered equipment to Defendants based upon representations that they would pay the lease payments and take good care of the equipment owned and paid for by Plaintiff as contemplated by the Lease Agreement.

73.    Plaintiff performed under the Lease Agreement by financing, providing and/or installing various equipment outlined therein.

74.    The Defendants failed to make any payments, and wrongfully sold the RFD machine to Heritage Defendants and shipped it across states lines improperly and without Plaintiff's knowledge or consent, a serious default and violation of the Lease Agreement.

75.    Given these breaches, Plaintiff issued multiple default demands terminating the lease and demanding the return of the equipment of the Lease Agreement, including the return of the RFD from Heritage Defendants.

76.    Heritage Defendants have dominion, possession and control over

Plaintiff's RFD machine, despite being aware of Plaintiff's ownership and demand for its return.

77. Egbert Defendants and Garawi Defendants retain dominion, possession and control over all remaining portions of Plaintiff's Equipment located at the DDLA Facility.

78. Despite promises otherwise, Defendants knowingly and intentionally interfered with Plaintiff's ownership rights in the equipment when Defendants wrongfully and continually converted all of Plaintiff's equipment and property. Specifically, Defendants have taken full control over Plaintiff's equipment and refuse to provide access to allow Plaintiff to retrieve Plaintiff's equipment following the repeated defaults and demands for the return of Plaintiff's equipment.

79. Defendants also sold and displaced Plaintiff's equipment when Defendants wrongfully and intentionally sold the RFD Machine to Heritage Defendants without any knowledge, consent or consideration. Defendants were given access to the equipment to operate, not for sale to third parties, nor removal from the facility.

80. Plaintiff did not consent to the misappropriation and conversion of the Equipment.

81. Plaintiff will be severely harmed because of Defendants' conversion and misappropriation.

82. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

83. Plaintiff has requested that Defendants allow access to the equipment and turn over the equipment also converted by Defendants that remains in the building, but Defendants have failed and refused to do so.

84. Defendants took the above described actions with actual malice, an intent to oppress and/or the reckless disregard for Plaintiff's rights and ownership in the equipment.

## THIRD CAUSE OF ACTION
## CLAIM AND DELIVERY – WRIT OF POSSESSION
(Against All Defendants)

85.     Plaintiff re-alleges and incorporates as though set forth fully herein by this reference each and every allegation contained in Paragraphs 1-84, inclusive of this Complaint.

86.     Plaintiff seeks the recovery of all of Plaintiff's property and Equipment that is included as part of the Lease Agreement from Defendants who have unlawfully retained said property and failed to return it following repeated demand and default.

87.     The Equipment and property of the Master Lease Agreement includes the following:

(a) Two (2) Delta Separation Cup-30 Centrifuge Collection Extraction systems;

(b) March Scientific Dual Falling Film System and accompanying parts;

(c) Delta Separation Rolled Film Distillation ("RFD")

(d) Perma Cool System

(e) Two (2) Perma Cool Condensers

(**Ex. B**, Lease Agreement).

88.     Plaintiff also filed a UCC Financing Statement protecting its property and the Equipment and establishing complete and singular ownership of the Equipment. (**Ex. M**, UCC Financing Statement).

89.     The Equipment above is primarily in the Defendants' facility, located at 2936 E. 11th Street, Los Angeles, California 90023, except the wrongfully removed RFD machine that was sold without Plaintiff's consent, approval or knowledge to a separate facility owned and controlled by Heritage Defendants, located at 14607 State Highway B, Perryville, Missouri 63775.

90.     Plaintiff desires immediate judicial intervention and determination of its rights and duties and a declaration that Defendants must immediately allow Plaintiff to retrieve its Equipment, from all Defendants, including the items under the possession

and control of Egbert Defendants and Gawari Defendants, located at the DDLA Facility, as well as retrieving the RFD machine under the possession and control of Heritage Defendants.

91. Defendants have no ownership interest in any of the Equipment above as ownership of the leased equipment has and continues to be solely owned by Plaintiff, and thus, there is no requirement to post a bond.

92. Plaintiff has established the probable validity of the Plaintiff's claim of possession, and therefore, a Writ of Possession is warranted.

93. The Defendants initially acquired possession of the Plaintiff's equipment in the ordinary course of business for commercial purposes, and (1) the property is not necessary for the support of the Defendant or Defendants' family, (2) there is an immediate danger that the property will become unavailable to levy by reason of being transferred, concealed or removed from the state, or will become substantially impaired in value, and (3) this ex parte issuance of a writ of possession is necessary to protect the Plaintiff's property.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against all Defendants as follows:

1) For immediate possession of Plaintiff's Equipment and personal property described above;

2) For an order of this Court ordering the issuance of a Writ of Possession authorizing, if necessary, appropriate law enforcement, to assist Plaintiff to seize and remove said Equipment and personal property of Plaintiff's outlined in the Lease Agreement from the unlawful possession of Defendants, thereby returning said property to Plaintiff forthwith;

3) For an order of this Court ordering the return of Plaintiff's Equipment and personal property as outlined in the Lease Agreement;

4) For a judicial declaration that no-one can operate the Equipment at issue

without Plaintiff's express written approval until further order of the Court;

5) For judicial declaration that no bond is required, since Defendants have no ownership or claim on the Equipment;

6) For a judicial declaration that Defendants will be required to cooperate and allow Plaintiff to retrieve and repossess its Equipment from Defendants' LA Facility, the Perryville location, or any other location that is currently housing any of Plaintiff's Equipment and personal property, without interruption, interference or obstruction, and if necessary, with law enforcement accompaniment;

7) For attorneys' fees, costs and other litigation costs and expenses;

8) For issuance of a writ of possession allowing Plaintiff to retrieve its equipment, or alternatively, a preliminary and permanent injunction restraining Defendants from operating or using Plaintiff's equipment, and allowing Plaintiff to retrieve Plaintiff's equipment via court order and if necessary, with law enforcement accompaniment.

9) For such other relief as the court may deem proper.

<u>**FOURTH CAUSE OF ACTION**</u>
<u>**DECLARATORY RELIEF**</u>
(Against All Defendants)

94. Plaintiff re-alleges and incorporates as though set forth fully herein by this reference each and every allegation contained in Paragraphs 1-93, inclusive of this Complaint.

95. Plaintiff knows that Defendants are engaged in a host of improper behavior including misappropriation, conversion, fraud and misrepresentation that is and will cause irreparable harm to Plaintiff if Defendants are not immediately enjoined and restrained from any continued use of and denial of access to Plaintiff's equipment.

96. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in the ongoing use and

17
COMPLAINT

operation of as well as denial of access to Plaintiff's equipment, and content that Defendants do not have the right to misappropriate, convert, exercise control over, and/or sell any of Plaintiff's equipment.

97.    Plaintiff desires immediate judicial intervention and determination of his rights and duties and a declaration that Defendants must be immediately enjoined from any continued use or denial of access to Plaintiff's equipment, assets, or property any further

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1)    For a declaration that Defendants do not have the right to use Plaintiff's property, Equipment whatsoever,

2)    For a declaration that Defendants must provide Plaintiff with access to the facilities and locations to secure and repossess the Plaintiff's Equipment, at the locations above, of the DDLA Facility, as well as the Perryville location, or any other location, and prevent any improper use or damage to the equipment until further order of the Court,

3)    For judicial declaration that no-one can operate the Equipment at issue without Plaintiff's express written approval until further order of the Court;

4)    For issuance of a preliminary and permanent injunction restraining Defendants from operating or using Plaintiff's Equipment, and allowing Plaintiff to immediately retrieve Plaintiff's Equipment via court order and, if necessary, with law enforcement accompaniment.

5)    For costs of suit herein incurred; and

6)    For such other relief as the court may deem proper.

DATED:  October 16, 2024                    **JAMES LAKE, ESQ.**


**By:**  */S/James Lake*
Attorney for Plaintiff
James Lake, Bar No. 298060
9314 Forest Hill Blvd, Suite 644
Wellington, Florida 33411
(949) 307-3665
jim@spartan-eagle.com

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in this action.


DATED:  October 16, 2024                    **JAMES LAKE, ESQ.**



                                            **By:**__*/S/James Lake*_____
                                            Attorney for Plaintiff
                                            James Lake, Bar No. 298060
                                            9314 Forest Hill Blvd, Suite 644
                                            Wellington, Florida 33411
                                            (949) 307-3665
                                            jim@spartan-eagle.com

20

COMPLAINT

## VERIFICATION

I, James Lake, declare and verify as follows:

1.  I am the sole owner and sole member Spartan Eagle Leasing Capital, LLC, and reside in and am a citizen of Florida.

2.  I have personal knowledge of the facts in the foregoing Verified Complaint, and if called on to testify, I would competently testify as to the matters stated therein.

3.  I declare under penalties of perjury that the factual statements set forth in the foregoing Verified Complaint are true and correct to the best of my information, knowledge, and belief.

Date:  October 16, 2024

_____
James Lake

COMPLAINT