**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SPARTAN EAGLE LEASING CAPITAL, LLC

                    Plaintiff,

v.

BRYCE EGBERT, ET. AL.,

                    Defendants.

**CASE NO.24-88960-cv**

**DECLARATION OF JAMES LAKE IN SUPPORT OF MOTION FOR WRIT OF POSSESSION AND INJUNCTIVE RELIEF**

<u>**JAMES LAKE DECLARATION**</u>

I, James Lake, declare:

1.      I have personal knowledge of the underlying facts stated herein, concerning the lease, defaults, and attempted recovery and repossession of equipment of my company, Spartan Eagle Leasing, LLC, and leased to Deeper Dive LA Management, LLC, Deeper Dive LA, LLC, and Bryce Egbert.  I could and would competently testify in a court of law to the following if called upon to do so.

2.      In the spring of 2023, Defendant Bryce Egbert approached me about leasing equipment for his licensed manufacturing cannabis business in the city of Los Angeles, California, for Deeper Deeper Dive LA Management ("DDM"). Deeper Dive LA Management is the licensing arm of the parent entity, Deeper Dive LA ("DDLA").  Egbert told me that he is the managing member of both DDLA and DDM, where his company Egbert Enterprises is the majority owner of both entities.

3.      Initially, Egbert and myself, through and on behalf of my company, Spartan Eagle Leasing ("Plaintiff") negotiated a lease for a March falling film recovery machine valued at $250,000.00.  My company delivered and installed this March machine in May of 2023, and as outlined in the Interim Lease Agreement, dated March of 2023 at Defendants' manufacturing facility, located at 2936 E. 11th

Street, Los Angeles, California 90023 ("DDLA Facility").

4.    Shortly thereafter, Egbert approached me again and asked for additional leasing assistance as Egbert did not have the funds to purchase new equipment outright.  In May and June of 2023, my company did as requested and provided leasing for Defendants to secure additional equipment of Plaintiff's choice, including the following:

  (a) Two (2) Delta Separation Cup-30 Centrifuge Collection Extraction systems;

  (b) Delta Separation Rolled Film Distillation ("RFD")

  (c) Perma Cool System, and

  (d) Two (2) Perma Cool Condensers

(This equipment, including the previously provided March machine mentioned above shall be collectively entitled "Equipment", and subject to the lease).  (**Ex. B**, Master Lease).  We paid a total of Six Hundred Forty Eight Thousand Five Hundred Sixty Six Dollars ($648,566.00) for the Equipment for Defendants.  My company also paid approximately $50,000 for installation and various hoses and connections in addition to the Equipment price, all delivered and installed at the DDLA Facility.

5.    Plaintiff also filed a UCC Financing Statement for the Equipment, establishing Plaintiff sole ownership (**Ex. M**, UCC Statement).

6.    Ultimately, the parties completed an amended lease outlining these additional items, with the completed Master Lease Agreement.

7.    Under the Lease Agreement, Defendant was required to provide monthly lease payments.  However, Defendants have not made a single payment.

8.    Despite repeated promises otherwise, Defendants still failed to provide a single dollar of payment.  In addition to failing to pay the monthly lease obligation, Defendants have breached the lease by failing to maintain insurance over the equipment at issue, which was never provided.

9.    In addition to the breaches of nonpayment and other lease breaches outlined above, I found out that Egbert wrongfully and inappropriately converted Plaintiff's RFD machine and transferred it across state lines to Heritage Missouri, LLC, and its ownership and management, including Garry Rivera.

10.    Plaintiff paid $75,000 for this RFD machine that has now been wrongfully removed from the Defendants' facility without Plaintiff's knowledge, consent, approval or otherwise.

11.    Neither Egbert nor the Heritage Defendants paid any funds, nor fully paid off the RFD Machine when it was sold, misappropriated and transferred to Heritage Defendants.  Nor did Egbert, nor Heritage Defendants, inform Plaintiff that they were transferring, selling, and/or disposing of the RFD Machine.

12.    When I learned of this months later, I filed a police report because of this wrongful theft and conversion of the RFD Machine.

13.    I attempted to contact Rivera and the other Heritage Defendants by leaving messages.

14.    The Heritage Defendants, despite being aware of Plaintiff's ownership rights in the RFD machine, by other members of DDLA as well as Plaintiff's messages, have refused to cooperate and return or pay me or my company for this wrongful transfer, conversion and transfer Plaintiff's RFD across state lines, from California to Missouri.

15.    Pursuant to Section 20 of the Lease Agreement, Egbert and DDLA/DDM created a serious default by not making any payments whatsoever, but also for converting and selling Plaintiff's equipment without Plaintiff's knowledge, consent, or approval.  Given this serious default, and as allowed by Section 21(b), Plaintiff issued a default notice terminating the Lease and demanded to take immediate possession of Plaintiff's equipment.  Per the Lease Agreement, with this Default Demand, Plaintiff informed Defendants it was demanding return of its

Equipment and was demanding the contractual right to "enter upon the premises of Lessee or any other premises where any of such Units maybe located and take possession of all or any of such Units and from that point hold, possess, operate, sell, lease, and enjoy such Units free from any right of Lessee, its successors and assigns". (**Ex. B**, Lease Agreement; **Ex. H**, Default Notice).

16.     Despite this notice, Defendants have collectively refused to provide access to Plaintiff's Equipment as per the lease nor did Defendants make any attempt at a single payment.

17.     This initial default notice was ignored, forcing Plaintiff to again issue a subsequent default letter, again demanding immediate access to the Plaintiff's Equipment.  Again, this demand was ignored.

18.     I also sought to retrieve the RFD from Heritage Defendants, but these requests and inquiries were ignored, and I have never been paid for the loss and transfer of this RFD machine across state lines without my knowledge or consent.

19.     In July of 2024, I was added to a text chain since additional owners were said to be involved in the operations of the DDLA/DDM at the DDLA Facility. (**Ex. K**, July Text Chain).  These additional owners were Ali Garawi, and his company Green Acre Management, and Tom Fornitelli, through his company Final Bell.  These additional owners asserted themselves into the operation of the DDLA facility where the Plaintiff's Equipment is located.

20.     During this initial text chain, I was shown videos and photos of equipment being removed and boxed up in the Defendants' DDLA Facility, and then I communicated with these additional owners and demanded the right to access and remove Plaintiff's Equipment from these additional owners of the DDM/DDLA business. Yet, despite promises otherwise, and clear ownership of Equipment titled to Plaintiff, Defendants have refused to allow me or my company representatives the right to retrieve the Equipment.

21. In late July of 2024, this group text was created that included Gawari Defendants, Egbert, members of DDLA/DDM, Plaintiff and non-party Elan Chen who is the owner of a company, Hera Farms, that also owns equipment leased by DDLA/DDM. (**Ex. K**, Text Chain). The purpose of the text message was to review the operations status of DDLA/DDM and Gawari Defendants, and Plaintiff and Chen were added because of the leased equipment they owned in the DDLA Facility.

22. On this text chain, Fornitelli and Gawari made initial promises that third party equipment in this facility would be safe and securely kept for the proper ownership. Defendant Gawari said that the equipment is "100% safe and isn't going anywhere", and that "you can come see/check equipment anytime You'd like". (**Ex. K**, July Text Chain).

23. Defendant Fortinelli and Defendant Gawari created a framework where the various owners of equipment, including myself, in the DDLA Facility would work with Defendant Gawari with regard to the equipment, as they recognized that the bulk of these items were not owned by Egbert or DDLA/DDM, but were owned by third parties, including my company and Elan Chen/Hera Farms.

24. This was followed up by me, on behalf of Plaintiff, providing proof of ownership, which was then confirmed by a member of DDLA/DDM that the equipment listed was Plaintiff's property, not DDLA/DDM/Egbert, or Heritage Defendants. (**Ex. K**, July Text Chain). I was left with the understanding that the verification was completed, and could coordinate the pickup of its Equipment.

25. These additional owners, Gawari Defendants, have not paid off the Lease Agreement obligation. Yet, they continue to maintain full control of the DDLA Facility and are refusing to provide access to allow Plaintiff to retrieve its Equipment. These additional owners, Gawari Defendants, as well as all Defendants are exercising dominion and control over Plaintiff's Equipment wrongfully, given the outstanding default, and Lease Agreement requirements that provide rightful

repossession by Plaintiff.

26.    In late July into August, on behalf of Plaintiff, I again began discussing retrieving the  equipment from Defendants' DDLA Facility.   I communicated with Gawari and Fortinelli on repeated occasions where the same method of equipment removal was discussed and agreed upon.  Both Defendant Gawari and Defendant Fortintelli told me that they were the additional owners of this operation.  They both then claimed that they would allow my company, Plaintiff, to retrieve my Equipment.

27.    In September, I then coordinated a crew, trucks/trailers, and a crane to remove the equipment, but when my crew was scheduled to arrive, Gawari postponed the retrieval claiming he needed additional time.

28.    Since then, I have repeatedly sought to have access to remove the equipment from Gawari, but have been denied my right to do so.

29.    Given this delay, on September 29, 2024, on behalf of Plaintiff, I sent a formal demand to both Gawari and Fortinelli, for all Defendants, again reminding them that the Lease Agreement between Plaintiff and DDLA/DDM/Egbert Defendants/Gawari Defendants was in default, had never issued a single payment, and Plaintiff simply sought to retrieve his equipment as allowed by the Lease Agreement.  (**Ex. N**, Sept. 29, 2024 Demand Letters).  Neither Gawari nor Fortinelli responded to these demands, nor answered communications and have not allowed my company the right to retrieve its Equipment.

30.    On Thursday October 3, 2024, and as indicated in the prior correspondence, the crew went to the DDLA Facility to remove Plaintiff's equipment.  Upon arrival, this crew was told repeatedly that Gawari would not allow them to remove and retrieve the Equipment.   This crew asked at least twice over the course of a 2-3 hour period.   I was on speaker when this crew was denied entry and heard the discussions where the DDLA/DDM employee said Gawari would not

allow entry or repossession rights.

31.     There is immediate risk of irreparable harm if Defendants are allowed to continue to have access to my company's Equipment, given the prior history of nonpayment, ongoing breaches and defaults, and selling portions of the equipment (RFD) that they do not even own.  I am also very concerned that if not stopped, Defendants will continue to liquidate Plaintiff's equipment and assets as they have done before.  Despite telling me repeatedly that I can repossess and remove my company's Equipment from the DDLA Facility, Defendants refuse to allow me and my company, the Plaintiff, to even access the facility, let alone remove the Equipment.

32.     I told Defendants that if we were not allowed entry and retrieval on our scheduled October pickup, that we would pursue legal means, including repossession, via federal court proceedings.

33.     I also emailed the complaint, and this Ex Parte Motion to Defendants Egbert, Gawari, Fortinelli, Rivera, Esposito and Mao, on the morning of October 16, 2024, following LR 7-19, LR-64, 65, Fed. Civ. P. 64, and Red. R. Civ. P. 65, and informed them that they needed to respond within 24 hours.

I declare under penalty of perjury that the foregoing is true and correct and executed on October 16, 2024, in Palm Beach County, Florida.

_____

James Lake

JAMES LAKE DECLARATION